**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 12-cv-02786-MSK-BNB

**WALTER F. WAGNER,**

       Plaintiff,

v.

**DISCOVER BANK,**

       Defendant.

**OPINION AND ORDER DENYING
MOTION TO COMPEL ARBITRATION**

**THIS MATTER** comes before the Court on the Defendant Discover Bank's Motion to Compel Arbitration and Stay Action **(#28)**. The Plaintiff Walter F. Wagner filed a Response **(#36)**, and the Defendant replied **(#44)**.

### I. Background

Mr. Wagner holds a Discover brand credit card with the Defendant, Discover Bank (Discover). Mr. Wagner admits that he incurred a debt with Discover on his credit card, and that he eventually was unable to make payments on his account.

The Complaint **(#1)** alleges that, beginning in 2010, Discover called Mr. Wagner's cellular phone multiple times a day via an automated dialing system and using a prerecorded voice. (Presumably, the calls were made with regard to Mr. Wagner's unpaid account.) It is further alleged that Mr. Wagner did not provide his cell phone number on his application for an account, and that the calls were made "with the intent to annoy[,] abuse, embarrass, and/or harass him." Mr. Wagner asserts that with each phone call, Discover violated the Telephone Consumer

Protection Act (TCPA), 47 U.S.C. § 227, *et seq*. He alleges that Discover committed a total of 93 violations.

In the instant motion, Discover seeks to compel arbitration of Mr. Wagner's TCPA claims pursuant to sections 3 and 4 of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 3-4. It contends that, at all relevant times, Mr. Wagner's Discover credit card was subject to a "Cardmember Agreement," which contains an arbitration provision. The pertinent arbitration provision provides that the parties may elect to arbitrate disputes that are covered by the agreement. It further provides that if one party elects arbitration, the other party no longer has the right to pursue its claims in court. Discover asserts that it has elected to arbitrate Mr. Wagner's TCPA claims pursuant to the arbitration agreement, and therefore Mr. Wagner is contractually bound to proceed to arbitration.

Mr. Wagner responds that an arbitration agreement does not exist between himself and Discover because he never received the specific Cardmember Agreement that Discover relies on, and he therefore did not agree to its terms. Alternatively, if an agreement is found to exist, Mr. Wagner contends that his TCPA claims do not fall within the scope of the arbitration agreement.[1]

## II. Discussion

Before a court may direct parties to proceed to arbitration under the Federal Arbitration Act, it must first be satisfied that the making of the agreement for arbitration is not at issue. 9 U.S.C. § 4. In other words, the Court must determine that a binding arbitration agreement exists between the parties before ordering arbitration. Here, Mr. Wagner disputes that he entered into

---

[1] Discover asserts counterclaims against Mr. Wagner for breach of contract and/or unjust enrichment based on Mr. Wagner's alleged failure to pay his account. Although Mr. Wagner maintains that an arbitration agreement does not exist between himself and Discover, he has nevertheless consented to arbitrate Discover's counterclaims. He objects only to arbitration of his own TCPA claims.

an arbitration agreement with Discover.  Only if an arbitration agreement exists between the parties does the Court consider the question of whether Mr. Wagner's TCPA claims must be submitted to arbitration.

### A.  Does a Binding Arbitration Agreement Exist?

An agreement to arbitrate is a form or part of a contract between the parties.  When the parties dispute the existence of an agreement to arbitrate, a trial is warranted if there are material facts in dispute.  9 U.S.C. § 4; *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997).  Courts apply a standard similar to that which governs motions for summary judgment.  *See, e.g., Stein v. Burt-Kuni One, LLC*, 396 F.Supp.2d 1211, 1213 (D.Colo. 2005).

Discover bears the initial burden of setting forth sufficient evidence to demonstrate that an enforceable arbitration agreement exists.  The burden then shifts to Mr. Wagner to show that there is a genuine dispute of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56.  If Mr. Wagner fails to meet his burden, then arbitration is appropriate for disputes covered by the arbitration agreement.  On the other hand, if Mr. Wagner establishes a genuine issue of material fact, a trial (or evidentiary hearing) on the existence of the arbitration agreement is required.

Generally, courts "apply ordinary state-law principles that govern the formation of contracts" to determine whether a party has agreed to arbitrate a dispute.[2]  *First Options of*

---

[2] The parties have not expressly raised a conflict of laws issue as to which state's law should apply.  Proceeding under the assumption that the Cardmember Agreement is enforceable against Mr. Wagner, Discover asserts that Delaware law applies pursuant to a governing law provision found in the contract.  Mr. Wagner does not appear to take a position one way or the other, citing to both Delaware and Colorado law.  Deciding whether to apply the governing provision is itself a matter of state law, to be determined by following the conflict of law rules of the forum state.  *See Shearson Lehman Bros. v. M & L Investments*, 10 F.3d 1510, 1514 (10th Cir. 1993).  Under Colorado rules, it is far from clear that the governing law provision should control here, where the parties dispute the formation of the contract in the first place.  In any event, the Court finds that it need not resolve this question because there is no outcome determinative conflict between

*Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration. *Pierce v. St. Vrain Valley School Dist. RE-1J*, 981 P.2d 600, 603 (Colo. 1999). While assent may be implied from the totality of the circumstances and the acts of the parties, it must appear in some form. *Mumm v. Adam*, 307 P.2d 797, 801 (Colo. 1957). An objective manifestation of assent is not rebutted by that same party's uncommunicated, subjective intent. *Avemco Ins. Co. v. Northern Colo. Air Charter, Inc.*, 38 P.3d 555, 559 (Colo. 2002).

Here, Discover has met its initial burden. It is undisputed that in 2007, Mr. Wagner applied for and received a Discover brand credit card. A Discover representative testified that according to Discover's business records, when Mr. Wagner applied for his account, the account he applied for was called a Discover "Platinum" account. Upon opening the account, Discover mailed him a "fulfillment kit" at the address he provided. This kit included his credit card and the applicable "Platinum" Cardmember Agreement. According to Discover, a credit card is not mailed to an account holder without a Cardmember Agreement. Based on this showing, Discover contends that if Mr. Wagner received his credit card, he also received the Agreement.

The Cardmember Agreement contained an arbitration provision, which provided the cardholder an opportunity to reject the arbitration agreement within thirty days of receiving the card.[3] The Agreement further provided that use of the account "means you accept this

---

Delaware and Colorado law concerning the formation of contracts. *See Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1171 (10th Cir. 2010); *Security Serv. Fed. Credit Union v. First Am. Mortg. Funding, LLC*, 861 F.Supp.2d 1256, 1264 (D.Colo. 2012); *see also Grasso v. First USA Bank*, 713 A.2d 304, 308-09 (Del.Super. 1998). The Court therefore applies the law of the forum. *See, e.g., Security Serv.*, 861 F.Supp. 2d at 1264.

[3] The Cardmember Agreement provided that "[y]ou have the right to reject the arbitration provision with respect to your new Account within 30 days after receiving your Card." The "Acceptance of Agreement" section of the Cardmember Agreement provided, in pertinent part, that "[y]ou may . . . reject the Arbitration of Disputes section by providing us a notice of

Agreement, including the Arbitration of Disputes provision." Discover never received a notice of rejection of the arbitration agreement from Mr. Wagner, and it is undisputed that Mr. Wagner used his account.

In May 2007, Discover renamed Mr. Wagner's "Platinum" account as a Discover "More" account. The account number and the terms and conditions in the Platinum Cardmember Agreement, remained the same.

In January 2008, however, Discover sent Mr. Wagner a notice of amendment to the Cardmember Agreement with his billing statement. The amendment modified the arbitration agreement in ways not relevant here, and Mr. Wagner continued to use his account.

Mr. Wagner asserts that he "believes he has saved every piece of correspondence that Discover sent to him regarding his account" and because he does not have a copy of the Cardmember Agreement, he must not have ever received it. He represents that "[i]f [he] had received a Cardmember Agreement [he] would have kept that document," and that "[his] Discover file contains no such Agreement."

The Court finds Mr. Wagner's assertions to be insufficient to create a genuine dispute of material fact. Mr. Wagner's affidavit does not affirmatively state that he never received the Cardmember Agreement. Rather, he assumes that because he cannot find a copy of the agreement in his file, he must not have received it. Mr. Wagner's assumption does not create a genuine dispute. More importantly, however, Mr. Wagner concedes that he received notices about periodic changes to the Agreement. These notices, copies of which were attached to Mr. Wagner's response, include a conspicuously placed phone number that Mr. Wagner could have called to request a copy of the Cardmember Agreement that applied to his account. Thus, at the

---

rejection within 30 days after receiving a Card. . . . Rejection of arbitration will not affect your rights or responsibilities under this Agreement."

5

least, Mr. Wagner was on notice that the use of his credit card subjected him to the Agreement. Despite such notices, Mr. Wagner continued using his card and thereby manifested his assent to the terms of the Cardmember Agreement.

Mr. Wagner further asserts that in 2007, he applied for a Discover "More" card, and therefore the "Platinum" Cardmember Agreement that was sent to him never applied to his account. Mr. Wagner asserts that Discover "mistakenly" identified his account as a Platinum account after he was approved. He asserts that by May 2007, "Discover corrected this mistake and all subsequent monthly statements refer to his card as a 'Discover More Card,' consistent with his application and approval for a 'Discover More Card.'" Mr. Wagner submits an "application record" consisting of a website print-out of what appears to be an online profile of his account. The print-out indicates that Mr. Wagner holds a Discover More account and that he has been a holder since 1/29/2007.

The Court finds that this evidence is insufficient to create a genuine dispute of material fact as to whether the terms of the Platinum Account Cardmember Agreement applied to his account. Assuming that Mr. Wagner had a Discover More account rather than a Platinum account, he has not submitted any evidence suggesting that the terms set forth in the Platinum Cardmember Agreement would not otherwise apply to his Discover More account. Accordingly, the Court finds that there is no genuine dispute of material fact as to the making of the arbitration agreement.

### B. Are the Mr. Wagner's TCPA Claims Subject to Arbitration?

Having found that an agreement to arbitrate exists, the next issue is whether Mr. Wagner is required to submit his TCPA claims to arbitration. Discover argues that Mr. Wagner's TCPA claims clearly fall within the scope of the agreement because the calls were made in an attempt

to collect on Mr. Wagner's account. Mr. Wagner responds that his claims, which concern the manner in which Discover acted, do not arise from or relate to his account or relationship with Discover because the claims are independent of his account or his relationship with Discover. Mr. Wagner therefore argues that his claims fall outside the scope of the arbitration agreement.[4]

The arbitration clause at issue is governed by the Federal Arbitration Act. *See* 9 U.S.C. § 2. When parties dispute whether an arbitration clause applies to a particular type of controversy, the question is for the Court. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). In resolving such question, the Court looks at the scope of the agreement and the nature of the claim asserted, applying the three-part inquiry set forth in *Cummings v. FedEx*, 404 F.3d 1258, 1261 (10th Cir. 2005). First, the Court must classify the arbitration clause as either broad or narrow. If reviewing a narrow clause, the Court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. When the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. If the arbitration clause is broad, a presumption of arbitrability arises; even a collateral matter must be arbitrated if the claim implicates issues of contract construction or the parties' rights and obligations under it. *Id.* (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)).

To determine the breadth of an arbitration clause, the Court asks whether "the parties clearly manifested an intent to narrowly limit arbitration to specific disputes." *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1196 (10th Cir. 2009). Generally, when an arbitration provision provides for any dispute "arising out of" a particular

---

[4] Mr. Wagner appears to concede that the agreement is not unconscionable or otherwise unenforceable. He argues only as to scope.

contract, the provision is construed broadly. *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1275 n.5 (10th Cir. 2010).

Here, the arbitration provision provides, in pertinent part:

> In the event of any past, present or future claim or dispute (whether based upon contract, tort, statute, common law or equity) between you and us arising from or relating to your Account, any prior account you have had with us, your application, the relationships which result from your Account or the enforceability or scope of this arbitration provision, of the Agreement or of any prior agreement, you or we may elect to resolve the claim or dispute by binding arbitration.
>
> IF EITHER YOU OR WE ELECT ARBITRATION, NEITHER YOU NOR WE SHALL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR TO HAVE A JURY TRIAL ON THAT CLAIM.  PRE-HEARING DISCOVERY RIGHTS AND POST-HEARING APPEAL RIGHTS WILL BE LIMITED. . . .[5]

The Court finds that the arbitration provision is a broad one.  The provision purports to encompass "any past, present or future claim or dispute" and it does not specifically exclude any particular type of claim.  Despite such broad language, however, the agreement expressly applies only to disputes that "aris[e] from or relat[e] to" an Account, a prior account, an application, the relationships resulting from the Account, or the scope and enforceability of the arbitration provision, Cardmember Agreement, or prior agreement.  In this regard, the scope of the agreement is limited to disputes whose factual underpinnings arise from or relate to the specified categories.

---

[5] The Court recognizes that the question of arbitrability of Mr. Wagner's TCPA claims arguably falls within the arbitration agreement because it implicates the scope of the agreement.  Under the plain language of the agreement, either party could have elected to arbitrate the question of arbitrability.  But because neither party has represented that they have elected to arbitrate this issue, the Court proceeds to address it here.  *See Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268 1274 (10th Cir. 2010) (unless the parties to an agreement "clearly and unmistakably" provide otherwise, the question of arbitrability is an issue for judicial determination).

The Court is mindful that where an arbitration provision is broad, a presumption in favor of arbitrability arises. However, notwithstanding the federal policy favoring it, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

Looking at the factual allegations forming the basis of Mr. Wagner's TCPA claims, the Court finds that the claims relate to matters beyond the scope of the parties' arbitration agreement. Mr. Wagner's allegations specifically relate to the legality of Discover's acts when it went about its collection activities. He alleges unlawful conduct by Discover when it made numerous calls to his cell phone and used a prerecorded voice system. These allegations relate to the *manner* in which Discover attempted collection. Although the existence of a debt on the account and the right to collect the debt would "arise from" or "relate to" the Account, the legality of the manner in which collection is pursued does not. The manner of collection — whether calls were made, how frequently they were made, and what was said during them — has nothing to do with either the Account, the terms of the Cardmember Agreement, or the parties' relationship. *See, e.g., Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995) (holding that antitrust claims not that are not factually related to parties' contractual relationship were not subject to arbitration agreement).

Discover has not pointed to any term governing the account which specifies how it will collect on the account, and the arbitration agreement does not identify manner of collection as a dispute to be arbitrated. Indeed, Mr. Wagner may succeed on his TCPA claims despite the existence of any account or relationship with Discover. Although the existence of the Account may have been the "but for" cause of the alleged violations, that is not enough to establish that

the claims arise from or relate to the Account or the parties' relationship resulting from the Account.  *See, e.g., In re Jiffy Lube International, Inc.*, 847 F.Supp.2d 1253, 1263 (S.D. Cal. 2012) (expressing doubt that TCPA claims arising from marketing text messages touch an underlying contract); *but see Cayanan v. Citi Holdings, Inc.*, 928 F.Supp.2d 1182 (S.D. Cal. 2013) (holding that plaintiffs' TCPA claims fell within agreement to arbitrate claims "related to" their accounts).  Accordingly, the Court finds that Mr. Wagner's TCPA claims do not fall within the scope of the arbitration agreement and arbitration cannot be compelled.

### III.  Conclusion

For the forgoing reasons, the Defendant's Motion to Compel Arbitration and Stay Action **(#28)** is **DENIED**.  All claims, including the Defendant's counterclaims, will be tried together in this Court.

Dated this 10th day of January, 2014.

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
Chief United States District Judge